**PRUDENTIAL–BACHE SECURITIES, INC., Plaintiff,**

v.

**Anthony CAPORALE, Defendant.**

**No. 86 Civ. 6136 (RLC).**

United States District Court, S.D. New York.

April 6, 1987.

Prudential-Bache Securities, Inc., New York City, for plaintiff; Joel E. Davidson, Garry Lischin, of counsel.

Novins, Farley, York, DeVincens & Pentony, P.A., Toms River, N.J., for defendant; Robert F. Novins, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

In this diversity action, plaintiff Prudential-Bache Securities Inc. ("Pru-Bache") seeks to vacate a decision reached by a panel of arbitrators to whom the company had referred claims it alleged against defendant Anthony Caporale, a former employee. Presently before the court are the parties' cross-motions for summary judgment.

## BACKGROUND

On or about June 1, 1984, Pru-Bache hired Caporale as an account executive in its Red Bank, New Jersey office. To lure Caporale away from a competitor, Pru-Bache agreed to lend him $50,122. Caporale executed a promissory note providing for repayment in three consecutive annual payments of $16,707. *See* Davidson Affidavit, Exhibit F at 3–4. In addition, the company and Caporale entered into an employment agreement which sets out a commission-based compensation package, as well as the "additional compensation" of three annual payments equal to the amounts due on the note. *Id.* at 1–2.

The note and employment agreement both set forth the parties' obligations in the event that Caporale's employment ended within three years. The note makes the balance due on the debt payable upon demand if the employment relationship ends before three years elapse. The employment agreement provides that should Caporale's "employment be terminated either voluntarily or involuntarily before June 1, 1987," he "would not be entitled to the additional compensation [equal to the payments due on the note] after the date of termination." *Id.* at 1–2. It also provides that should he be terminated, the additional compensation payments would be accelerated, unless he was terminated "for cause," in which case those monies would be forfeited. The agreement defines termination for cause in some detail. *See id.* at 2.[1]

---

1. Termination for cause is defined as termination:
   as a result of an act of embezzlement, fraud, or dishonesty, or [if] you have deliberately

disregarded the policies or instructions of Prudential-Bache, or if Prudential-Bache determines that you have made an unauthorized disclosure of any of the secrets or confidential

On July 8, 1985, Pru-Bache terminated Caporale after he refused to make payment on the note, allegedly because he objected to the manner in which Pru-Bache had computed withholdoing taxes on his additional compensation. *See* Plaintiff's Memorandum at 4. After Caporale refused the company's demand that he pay the $33,414 (plus interest) that remained to be paid on the note, Pru-Bache filed an arbitration claim with the Director of Arbitration of the New York Stock Exchange. Caporale answered, and interposed a counter-claim for breach of contract and wrongful termination. On July 22, 1986, in a summary opinion, the arbitrators awarded Pru-Bache $34,109.73, and Caporale $216,000.

In this appeal Pru-Bache argues that the award must be overturned because the sums awarded could only have been reached by an internally inconsistent finding that Caporale was terminated both wrongfully and for cause. It argues that Caporale's liability for $34,109.73 represents his obligation under the note, an obligation it says is only consistent with termination for cause. At the same time, it contends, the $216,000 award must result from a finding of wrongful termination. Caporale had testified at the hearing to an annualized income of $100,000; according to Pru-Bache, this explains the $216,000 as two years of compensation with interest at 8%. Pru-Bache argues that even assuming that Caporale could be required to repay the obligation on the note based on a finding of wrongful termination, he should have recovered the additional compensation owed him as well as the $216,000. It attributes an alleged absence of such additional compensation in Caporale's award to a simultaneous, contradictory finding of termination for cause.

DISCUSSION

■ Under the Federal Arbitration Act, a court may vacate an arbitration award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them

that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d). In light of the strong national policy favoring arbitration, however, courts are extremely reluctant to overturn arbitration decisions, particularly where a party appeals on the ground that the arbitrator misinterpreted a contract or some other writing. *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 703 (2d Cir.1978). Courts in this circuit are bound to sustain an arbitration award "even if the arbitrator's interpretation of the contract is clearly erroneous." *Meyers v. Parex, Inc.*, 689 F.2d 17, 18 (2d Cir.1982) (citing *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 432 (2d Cir.1974)). Only an "irrational" award may be vacated. *Andros Compania Maritima, supra*, 579 F.2d at 704 (citing *I/S Stavborg, supra*, 500 F.2d at 430 n. 12, 431)).

Pru-Bache may be correct that an arbitration award finding that an employee was terminated both wrongfully and for cause would be sufficiently irrational as to require a reviewing court to vacate the award. The court is unconvinced, however, that the arbitrators' decision in this case suffered from this defect.

Although it may be presumed that the arbitrators found that Caporale was wrongfully terminated, nothing in the award establishes that they also found that he was dismissed for cause. The most conspicuous gap in Pru-Bache's argument is the fact that the purported basis for Caporale's dismissal—his alleged default on the promissory note—does not come within the employment agreement's definition of termination for cause.[2]

Pru-Bache's argument is based on its exegesis of what the awards represent. The panel was, of course, under no obligation to explain the basis for its decision. "It is settled law in this circuit that arbitrators may render a lump sum award without disclosing their rationale for it, and that

information of Prudential-Bache, or induced any customers of Prudential-Bache to break any contracts with Prudential-Bache.... Termination for cause shall also include the following: failure to be registered in a state or states where you do business; failure to dis-

close any pending regulatory and/or legal problems; and lack of commission production.
Davidson Affidavit, Exhibit F at 2.

**2.** *See* note 1, *supra*.

when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it." *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir.1985). "If a ground for the arbitrator[s'] decision can be inferred from the facts of the case, the award should be confirmed." *Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir. 1978) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972)).

In this case it is difficult to overlook several plausible explanations for the specific figures the arbitrators arrived at. *See Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 894–95 (2d Cir.1985) (per curiam) (upholding award after reviewing possible explanations). To begin, there is no support for Pru-Bache's argument that a finding of wrongful termination would have precluded Pru-Bache from recovering the $34,-109.73, which the company probably properly characterizes as the money still due on the note. The note explicitly states that payment is required upon demand in the event of Caporale's "[t]ermination of employment with Prudential-Bache." Davidson Affidavit, Exhibit F at 3–4. It does not condition such payment on termination for cause. Thus, there is little mystery in the panel's decision that Caporale is liable for the money owed on the note.

Similarly meritless is Pru-Bache's argument that because the $216,000 allegedly does not include recovery of the additional compensation, that award could not have resulted solely from a finding of wrongful termination. The employment agreement provides that "[s]hould [Caporale's] employment be terminated either voluntarily or involuntarily before June 1, 1987, [he] of course would not be entitled to the additional compensation after the date of termination." Davidson Affidavit, Exhibit F at 1. Thus, the arbitrators may have read the above provision to preclude Caporale from recovering any additional compensation

"after the date of termination." In that case, the absence of any recovery for additional compensation would be entirely consistent with a finding of wrongful termination.[3] It is also possible that the $216,-000 award includes the additional compensation; that figure could have been determined by granting Caporale two years of ordinary compensation at $100,000 per year, with a round figure of $16,000 representing the annual additional compensation due (the exact figure would be $16,707). In either case, the award could hardly be termed unsupported, *see Kurt Orban, supra*, 573 F.2d at 740, or irrational. *See Andros Compania Maritima, supra*, 579 F.2d at 704. Pru-Bache's mere speculation as to what the panel might have found is simply not sufficient to warrant the court's intervention. *See Koch Oil, supra*, 751 F.2d at 554.

In sum, there is nothing to suggest that the considered judgment of the arbitration panel should be overruled. Plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the arbitration award is confirmed in all respects.

IT IS SO ORDERED.

---

**3.** An award based on this reading would be inconsistent with the provision in the employment agreement requiring accelerated payment of the additional compensation in the event of a termination other than for cause, *see* Davidson Affidavit, Exhibit F at 1–2, but that inconsistency would represent an inconsistency in the underlying documents rather than in the panel's decision.